FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 05, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAMELA ALLEN,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 1:16-CV-3143-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 16. Attorney D. James Tree represents Pamela Allen (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income (SSI) on March 30, 2012, alleging disability since March 1, 2006, due to back pain, anxiety, and high blood pressure. Tr. 157, 176. Plaintiff's application was denied initially and upon reconsideration.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Administrative Law Judge (ALJ) Glenn G. Meyers held a hearing on July 2, 2014, Tr. 34-61, and issued an unfavorable decision on October 31, 2014, Tr. 18-29. The Appeals Council denied review on May 23, 2016. Tr. 1-6. The ALJ's October 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 22, 2016. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on August 6, 1976, and was 29 years old on the alleged onset date, March 1, 2006. Tr. 37, 157. She attended school through the 10th grade, later obtained a GED, and has completed training as a Certified Nursing Assistant (CNA). Tr. 176, 225, 505. Plaintiff reports her past employment as work in customer service, as a cashier, and as a CNA. Tr. 182. She indicated she stopped working on February 5, 2011, because of her conditions, Tr. 176, and testified she last worked in 2011, eight hours a day, five days a week, as a cashier at a gas station, Tr. 43.

At the time of the administrative hearing, Plaintiff stated she had five children, ages 21, 15, 13, 12 and seven, and the minor children continued to reside with her. Tr. 39. Plaintiff indicated she was responsible for feeding and clothing her children, she did the laundry and cleaned the house, and she would take her children to school and baseball games. Tr. 39-40.

Plaintiff had back surgery in 2010 which she stated helped with her back pain for approximately four months. Tr. 44-45. After that time, she indicated she began to experience increased back pain and pain and numbing in her left leg. Tr. 45, 53, 55. She testified her pain is aggravated by bending or by sitting, standing or lying down too long. Tr. 45. She did not take prescription medication for her

pain, but would control her pain by taking 1000 milligrams of Ibuprofen every six hours. Tr. 48-49. Plaintiff stated she needed to recline or lie down half the day as a result of her back pain. Tr. 55, 56. At the time of the administrative hearing, she had recently been prescribed physical therapy or four weeks of anti-inflammatory medications before her insurance would approve an updated MRI of her back. Tr. 54.

Plaintiff also testified she suffers from high blood pressure and anxiety, but she had not been treated for anxiety with medication or otherwise. Tr. 51-52.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 31, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, March 30, 2012. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease and anxiety disorder not otherwise specified. Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21. The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform light work, except that she could only occasionally stoop, crawl and crouch, could not climb, and would be limited to unskilled, routine, repetitive work. Tr. 22.

At step four, the ALJ found Plaintiff was not able to perform any of her past relevant work. Tr. 27. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of production assembler and hand packager. Tr. 27-28. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 30, 2012, the date the application was filed, through the date of the ALJ's decision, October 31, 2014. Tr. 28-29.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in this case by (1) rejecting the medical opinion of William Robinson, M.D.; and (2) improperly discrediting Plaintiff's symptom testimony. ECF No. 15 at 5-16.

## DISCUSSION

**A.   Plaintiff's Symptom Testimony**

Plaintiff asserts the ALJ erred by failing to provide valid reasons for finding her not fully credible in this case. ECF No. 15 at 10-16.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. 23.

The ALJ first held that the objective medical evidence of record did not substantiate Plaintiff's pain complaints. Tr. 23. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

Plaintiff underwent left-sided L5-S1 laminotomy, foraminotomy, and microdiscectomy without complication in August 2010. Tr. 347-349. Plaintiff indicated "much improved" back pain after the surgery. Tr. 344. She reported occasional discomfort in the left paravertebral, but was otherwise "doing very well." Tr. 344. A January 7, 2011 MRI revealed post-operative changes at L5-S1, and further evaluation was recommended. Tr. 319. A January 14, 2011 MRI revealed no specific evidence of recurrent disc protrusion/extrusion. Tr. 317, 365. Although Plaintiff continued to complain of low back and left lower extremity pain/numbness, physical examination findings in 2011 and 2012 showed mostly normal gait and station, normal range of motion, and full strength. Tr. 273 (3/3/11); 271 (4/14/11); 269 (5/3/11); 267 (5/10/11); 265 (6/1/11); 263 (6/22/11); 261 (7/21/11); 498 (5/16/12). Hoan Tran, M.D., examined Plaintiff in August 2011; found no evidence of recurrent herniated disc, stenosis or neural foraminal stenosis; and recommended conservative treatment with a psychological evaluation

for chronic pain and additional workup. Tr. 365-367. Examination notes from September 2012 evidence Plaintiff's pain complaints and request for pain medications; however, it is noted that Plaintiff was previously on a pain contract through a different office and was released due to asking for early pain medication refills.[1] Tr. 533. Plaintiff also admitted to taking her father's prescription medication for her pain. *Id*. October 6, 2012 examination notes indicate Plaintiff was again requesting pain medications. Tr. 531. It was noted that her drug screen was positive for marijuana and that she had admitted to again taking her father's prescription medication. *Id*. She had normal range of motion without pain of the upper and lower extremities and a normal gait. *Id*. A physical examination on October 24, 2012, revealed normal upper and lower extremity strength and tone, normal gait, and normal range of motion without pain of the upper and lower extremities. Tr. 524. It was reported that Plaintiff had "one strike already as she used more medication than she was supposed to." *Id*. A November 9, 2012 examination revealed normal upper and lower extremity strength and tone, normal gait, and normal range of motion without pain of the upper and lower extremities. Tr. 517-519. It was noted that Plaintiff had reported to the emergency room for back pain and denied having a primary care physician. Tr. 519. Plaintiff now had "three strikes" and would no longer receive refills of her pain medication. Tr. 519. On December 23, 2012, Plaintiff indicated that while her back pain was not as controlled as she wished, she was doing well. Tr. 515-516. Plaintiff stated she had good energy and was sleeping well. Tr. 515. Plaintiff had normal gait, station and posture. Tr. 516. On July 16, 2013, Plaintiff reported to the emergency room with

---

[1] October 5, 2012 medical notes indicate Plaintiff had been managed for the last three years by Dr. Robertson, using narcotics at a fairly high dosage. Tr. 527. Plaintiff reported she was enrolled in a pain contract and had a couple of early refill incidents related to the theft of her medications. Tr. 527.

complaints of knee pain; however, Plaintiff had intact range of motion in all extremities and full active range of motion, 5/5 motor strength, and intact sensation. Tr. 585-592. No mediations were administered. Tr. 586. As noted by the ALJ, physical examinations throughout 2014 reveal nothing more than tenderness of the low back. Tr. 24, 537-542.

Based on the foregoing, it is apparent that the objective medical evidence of record does not support the level of pain alleged by Plaintiff in this case. Tr. 23. It was proper for the ALJ to conclude Plaintiff's was not entirely credible because Plaintiff's alleged disabling pain was not consistent with the medical evidence which reflects Plaintiff's physical impairments did not cause disabling functional limitations.

The ALJ further determined that the objective medical evidence of record did not substantiate Plaintiff's allegations of disabling mental health limitations. Tr. 25. Plaintiff did not challenge this finding in her opening brief.[2] ECF No. 15 at 10-16.

The ALJ specifically found that Plaintiff's lack of mental health treatment undercut her credibility with regard to her anxiety symptoms. Tr. 25; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies."). The ALJ noted there is no evidence Plaintiff sought any mental health treatment even when she had medical insurance and there is no indication she took any medication for anxiety symptoms. Tr. 25. As indicated by the ALJ, Plaintiff testified she merely took deep breaths to calm her anxiety symptoms. Tr. 51. Moreover, the

---

[2]*See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (the Court will not ordinarily consider matters on appeal that were not specifically and distinctly argued in a party's opening brief).

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

mental exam completed by Manuel Gomes, Ph.D., on May 20, 2012, revealed no significant mental health concerns, Tr. 504-508, Amber Farook, M.D., noted in September and November 2012 that Plaintiff did not present with anxiety, depression, mood changes or suicidal ideation, Tr. 518, 530, and, in November 2013, Plaintiff's mood, affect and behavior were found to be within normal limits, Tr. 576. Tr. 25.

The ALJ's determination that Plaintiff's was not fully credible because her mental health complaints were not substantiated by the evidence of record and based on her lack of overall mental health treatment is supported by substantial evidence.

The ALJ next found the record reflected some drug-seeking behavior as well as drug use/misuse, which called into question Plaintiff's credibility. Tr. 24. An ALJ may properly consider evidence of a claimant's substance abuse and/or drug-seeking behavior in assessing credibility. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or substance abuse can contribute to an adverse credibility finding); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered drug-seeking behavior).

As discussed above, September 2012 examination notes revealed Plaintiff was previously on a pain contract and was released due to asking for early pain medication refills. Tr. 533. October 5, 2012 medical notes indicated Plaintiff had been using narcotics at a fairly high dosage and had a couple of early refill incidents related to the theft of her medications. Tr. 527. Plaintiff also admitted to taking her father's prescription medication for her pain. *Id*. October 6, 2012 examination notes indicated Plaintiff was again requesting pain medications and had admitted to again taking her father's prescription medication. Tr. 531. Her drug screen was positive for marijuana. *Id*. On October 24, 2012, it was reported that Plaintiff had "one strike already as she used more medication than she was

supposed to." Tr. 524.  Plaintiff was examined on November 9, 2012, and it was noted that Plaintiff now had "three strikes" and would no longer receive refills of her pain medication.  Tr. 519.

The ALJ's decision to find Plaintiff less than fully credible based on her drug-seeking behavior as well as drug use/misuse is fully supported by the evidence of record.

Within the section of the ALJ's determination pertaining to Plaintiff's credibility, the ALJ noted Plaintiff had been frequently advised to stop smoking, yet she continued to smoke. Tr. 24.  A claimant's failure to comply with a diagnosis to quit smoking "is an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health.").  This is especially true in this case because smoking is entirely unrelated to Plaintiff's alleged disabling symptoms.  The Court concludes Plaintiff's failure to quit smoking is not a clear and convincing reason for discounting Plaintiff's credibility.  Nevertheless, given the ALJ's other supported reasons for finding Plaintiff less than fully credible in this case, the Court finds the notation that Plaintiff refused to stop smoking is, at most, harmless error. *See Carmickle*, 533 F.3d at 1163 (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ next held Plaintiff made conflicting reports about the nature of her anxiety, which undermined her credibility with regard to the severity of her mental

///

health symptoms.[3] Tr. 25. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).

The ALJ indicated Plaintiff reported in May 2012 that she was unsure of the onset of her anxiety and that she had anxiety mainly when she had testing or had to drive. Tr. 504. However, at the administrative hearing, Plaintiff testified her anxiety was caused by being around large groups of people or other life stressors. Tr. 51. At that time, Plaintiff testified to driving to doctor appointments and her children's sporting events, yet she did not report any symptoms of anxiety related to these activities. Tr. 38. It was proper for the ALJ to identify Plaintiff's conflicting reports regarding her alleged anxiety as support for his adverse credibility determination.

Finally, the ALJ determined Plaintiff's daily activities were inconsistent with her assertion of disabling functional limitations. Tr. 25. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

At the administrative hearing, Plaintiff testified she was responsible for feeding and clothing her children, she did the laundry and cleaned the house, and she would take her children to school and baseball games. Tr. 39-40. The ALJ indicated January 2010 records show Plaintiff reported she was a stay-at-home mom with a two-year-old child and five children overall. Tr. 357. In February 2011, Plaintiff indicated she was working approximately four to six hours a day at a gas station, both as a teller and in the carwash located there. Tr. 343. In May 2012, Plaintiff reported she had worked as a cashier from 2008 to 2011 and was actively involved with caring for her young children and getting them to their

---

[3]Plaintiff failed to address this finding in her opening brief. *See Carmickle*, 533 F.3d at 1161.

sporting events. Tr. 505. In October 2012, it was noted Plaintiff was "very involved" with her church and loved spending time playing sports and taking her boys to their various sporting events. Tr. 527. In May 2014, Plaintiff reported she was planning her wedding that would take place in a few months.[4] Tr. 541.

The foregoing activities appear to contradict Plaintiff's allegation that she was completely disabled during the relevant time period. It was proper for the ALJ to consider this level of activity as inconsistent with Plaintiff's claim of totally disabling limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom testimony was not entirely credible in this case.

///
///
///

---

[4]While the ALJ agrees with Plaintiff that her relationship status is not relevant to her symptom testimony, ECF No. 15 at 13, the reported activity of planning her wedding is pertinent to an assessment of the nature of Plaintiff's activities of daily living.

**B.     Dr. Robinson**

Plaintiff contends that the ALJ erred by according little weight to the medical opinions of William Robinson, M.D., regarding Plaintiff's physical limitations. ECF No. 15 at 5-10.

On July 8, 2014, Dr. Robinson filled out a form provided by Plaintiff's counsel, D. James Tree, "concern[ing] [Plaintiff's] application for Social Security Disability." Tr. 535-536. Dr. Robinson indicated he had treated Plaintiff from May 15, 2014, to July 8, 2014, and had diagnosed hypertension, chronic low back pain, left leg pain/numbness/weakness and anxiety. Tr. 535. He noted Plaintiff had to lie down three to four times per day, for one hour, due to her back pain and leg numbness; could not sit or stand for more than 20 minutes at a time; could not bend or squat; could not lift, push or pull; and could not lie down for more than one hour at a time. Tr. 535-536. Dr. Robinson opined that a 40-hour work week would greatly increase Plaintiff's back pain. Tr. 536.

The ALJ accorded this form opinion of Dr. Robinson "little weight," finding it was inconsistent with the weight of the objective medical evidence of record and inconsistent with Dr. Robinson's own examination findings. Tr. 26.

As previously discussed, Plaintiff underwent left-sided L5-S1 laminotomy, foraminotomy, and microdiscectomy without complication in August 2010. Tr. 347-349. A January 7, 2011 MRI revealed post-operative changes at L5-S1, and further evaluation was recommended, Tr. 319; however, a January 14, 2011 MRI revealed no specific evidence of recurrent disc protrusion/extrusion, Tr. 317, 365. Physical exams in 2011 and 2012 revealed mostly normal gait and station, normal range of motion, and full strength. Tr. 273 (3/3/11); 271 (4/14/11); 269 (5/3/11); 267 (5/10/11); 265 (6/1/11); 263 (6/22/11); 261 (7/21/11); 498 (5/16/12). In August 2011, Dr. Tran found no evidence of recurrent herniated disc, stenosis or neural foraminal stenosis and recommended conservative treatment with a psychological evaluation for chronic pain and additional workup. Tr. 365-367.

October 6, 2012 examination notes indicated Plaintiff had normal range of motion without pain of the upper and lower extremities and a normal gait. Tr. 531. A physical examination on October 24, 2012, revealed normal upper and lower extremity strength and tone, normal gait, and normal range of motion without pain of the upper and lower extremities. Tr. 524. On November 9, 2012, exam notes evidenced normal upper and lower extremity strength and tone, normal gait, and normal range of motion without pain of the upper and lower extremities. Tr. 517-519. On December 23, 2012, Plaintiff indicated that while her back pain was not as controlled as she wished, she was doing well. Tr. 515-516. Plaintiff stated she had good energy and was sleeping well. Tr. 515. Plaintiff had normal gait, station and posture. Tr. 516. On July 16, 2013, Plaintiff reported to the emergency room with complaints of knee pain; however, Plaintiff had intact range of motion in all extremities and full active range of motion, 5/5 motor strength, and intact sensation. Tr. 585-592. No mediations were administered. Tr. 586. The foregoing medical evidence contradicts Dr. Robinson's opinion that Plaintiff must lie down for an hour, three to four times per day, due to her back pain and leg numbness; could not sit or stand for more than 20 minutes at a time; could not bend or squat; could not lift, push or pull; and could not lie down for more than one hour at a time. Tr. 535-536.

      The ALJ additionally indicated the assessed limitations were entitled to little weight because they were inconsistent with Dr. Robinson's own examination findings in which he noted only tenderness. Tr. 26. On May 15, 2014, at Plaintiff's new patient examination, Dr. Robinson found only tender low back on examination. Tr. 541. On June 13, 2014, Dr. Robinson noted "tender low back on the left especially," Tr. 539, and, on July 8, 2014, again found "tender low back" on examination, Tr. 537. The consistent findings of only "tender low back" are not compatible with the significant limitations assessed by Dr. Robinson on the July 2014 form provided by Plaintiff's counsel regarding Plaintiff's application for SSI.

Based on the foregoing, the Court finds the ALJ provided specific, legitimate reasons, supported by substantial evidence, for according little weight to Dr. Robinson's July 2014 assessment. The ALJ did not err with respect to his findings regarding this report by Dr. Robinson.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED September 5, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE